*54 OPINION.
Stbkniiagbn:
The question to be decided is whether the petitioners are to be treated as having been entitled distributively to the $116,621.49 of the partnership income earned in 1933 after Hallowell’s death on June 1, 1933, and actually paid to his estate in accordance with the partnership agreement. According to the agreement, Hal-lowell’s estate was in its own right entitled to the $116,621.49 as its distributive share of partnership earnings of 1933, and it is in recognition of this right that the estate received the amount. The Commissioner, however, constructs a theory by which the amount of 1933 earnings is to be treated as distributable in the first instance to the petitioners as the sole partners after Hallowell’s death and in turn used by them to purchase from the estate Hallowell’s interest in the partnership. In our opinion it clearly appears that the Commissioner’s determination is both contrary to fact and unsupported in law.
The maimer of taxing partnership income is found in Eevenue Act of 1932, section 182:
There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. * * *
The partnership agreement which governed the distribution of income clearly provides for the projection of the partnership six months beyond Hallowell’s death, and that the share to which Hallowell would have been entitled had he lived should be distributable to his estate. This six-month period was properly extended until the end of the calendar year 1933. It was by virtue of these agreements that the estate had its direct right to the share of the partnership income here in question.
Looking at the later agreement of January 2, 1934, whereby the petitioners alone organized a new successor partnership and agreed upon a method of payment to the estate for Hallowell’s interest in the earlier partnership, the Commissioner infers that the share of 1933 income to which the Hallowell estate was already entitled was recognized by the partnership as being payable by the new partners *55 in settlement of Hallowell’s capital interest. We find nothing, however, to support this view. It is true that the 1934 agreement recognizes the estate’s share in the 1933 earnings, but there is no reason to confuse the character of this agreement with the amount which the estate was entitled to receive from the new partnership as Hallowell’s capital contribution in the old.
The petitioner argues with much force that Hallowell’s estate received the amount as compensation for the use of his capital contribution; that the estate was during 1933 a continuing partner in the firm and received the $116,621.49 as its distributive share of partnership income; that, if not a partner, it had such a direct beneficial interest in the amount as to impose a trust obligation upon the surviving partners which would preclude their having any right in the $116,621.49 as a distributive share of partnership income; or that the estate’s right to the amount under the agreement was so definite as to amount to a contractual charge on partnership earnings which the partnership was required to pay before the distributable income could be determined. We refrain from adopting any of these characterizations as the reason for decision, since it is clear for the reasons already stated that the amount attributed to each partner may not be regarded as “Ms distributive share, whether distributed or not, of the net income of the partnership for the taxable year.”
The respondent cites Hill v. Commissioner, 38 Fed. (2d) 165; Pope v. Commissioner, 39 Fed. (2d) 420; W. Frank Carter, 36 B. T. A. 60; Arthur C. Hilmer, 27 B. T. A. 1165, but all of those cases are distinguishable because the circumstances showed a payment by the surviving partners to the representative of the deceased partner for the acquisition of the capital interest in the partnership. Both parties cite Bull v. United States, 295 U. S. 247, but we think that the reasoning supports the petitioner’s rather than the respondent’s view. As to the amount paid in recogmtion of Hallowell’s capital interest in the partnership, the opinion clearly indicates that this amount may not be used to reduce the taxable income of the surviving partners in firm profits; but as to the portion of the current profits paid directly to the estate, it is its income and not corpus, “and this is so whether we consider the executor a member of the old firm for the remainder of the year or hold that the estate became a partner in a new association formed upon the decedent’s demise.” The language of the Board in James Brown, 10 B. T. A. 1036, can well be applied here to the same effect:
* * * The plain intent of the partnership agreement was that regardless of the time during a year in which a partner might die, his estate would share in the partnership profits for the remainder of the year in the same manner as if he had lived throughout the year, and the capital which he had invested in the business would remain in, and at the risk of, the business until the end *56 of the year. * * * After the end of the year, settlement was to be made with the estate not only on account of the profits for the year, but also for the capital which the deceased partner had in the business. * * * The profits of the partnership to which the surviving partners were entitled were not the total profits, but the total profits less the amount which all agreed should go to the estate of a deceased partner. There was not, therefore, receipt by these surviving partners of the total profits and then a distribution to the estate, but they were entitled in the first instance to receive only their share of the partnership profits and the remainder was a share of the profits which accrued to the estate.
See also Walter T. Gudeon, 32 B. T. A. 100.
The Commissioner’s determination is reversed.

Decision will be entered wnder Bule 50.